**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MINTO,
            *Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
            *Respondent.*

No. 12-74027

Agency No.
A087-957-024

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 23, 2017
Honolulu, Hawaii

Filed April 17, 2017

Before:  Alex Kozinski, Michael Daly Hawkins,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Immigration

The panel denied Minto's petition for review of the Board of Immigration Appeals' decision finding him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he lacked a valid entry document "at the time of application for admission."

The panel held that Minto is an immigrant who lacked a valid entry document. The panel also held that he is deemed by law to have made a continuing application for admission because he was in the Commonwealth of the Northern Mariana Islands without admission or parole on November 28, 2009, the date United States immigration laws became applicable to the CNMI. The panel held that the Immigration Judge and BIA therefore correctly concluded that Minto was inadmissible under 8 U.S.C. § 1182(a)(7).

### COUNSEL

Joseph E. Horey (argued), O'Connor Berman Dotts & Banes, Saipan, Commonwealth of the Northern Mariana Islands, for Petitioner.

Jessica E. Burns (argued), Senior Litigation Counsel; Ashley Martin, Trial Attorney; Mary Jane Candaux, Assistant Director; Office of Immigration Litigation, Civil Division,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BEA, Circuit Judge:

In 2009, the immigration laws of the United States took effect in the Commonwealth of the Northern Mariana Islands ("CNMI"), a group of islands in the Pacific Ocean.[1] An immigration judge ("IJ") then ordered Minto,[2] who was in the CNMI, removed on the basis of 8 U.S.C. § 1182(a)(7)(A)(i)(I), which makes an immigrant inadmissible if he lacks a valid entry document "at the time of application for admission." The Board of Immigration Appeals ("BIA") dismissed Minto's subsequent appeal. He now petitions this Court for review, arguing that 8 U.S.C. § 1182(a)(7)(A)(i)(I) does not apply to him because he never applied for admission to the United States at a definite time. We deny Minto's petition for review because we conclude that he is an immigrant who lacked a valid entry document and is deemed by law to have made a continuing application for admission by being present in the CNMI, an application

---

[1] Located just north of Guam, the CNMI is a three-hundred mile archipelago consisting of 14 islands, with a total land area of 183.5 square miles. The principal inhabited islands are Saipan, Rota and Tinian. The northern, largely uninhabited islands are Farallon de Medinilla, Anatahan, Sariguan, Gudgeon, Alamagan, Pagan, Agrihan, Asuncion, Maug Islands, and Farallon de Pajaro. *See* COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, https://www.doi.gov/oia/islands/cnmi (last visited March 8, 2017).

[2] The petitioner in this case has a single name.

that was considered and denied during his removal proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The Commonwealth of the Northern Mariana Islands

Previously Spanish possessions, the Northern Mariana Islands first came under United States control after World War II. *See U.S. ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 751 (9th Cir. 1993). In 1976, Congress, the Northern Mariana Islands District Legislature, and the people of the Northern Mariana Islands approved a Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (the "Covenant"). *See* Pub. L. No. 94-241, 90 Stat. 263, 265–66 (1976) (joint resolution of Congress approving the Covenant and setting out its text). Under the Covenant, the new Commonwealth of the Northern Mariana Islands delegated "complete responsibility" for some matters—such as foreign affairs and defense—to the United States, but retained "the right of local self-government . . . with respect to internal affairs." Covenant art. 1, §§ 103–104.

Initially, immigration was reserved to the CNMI. *See* Covenant § 503(a) ("The following laws of the United States . . . will not apply to the Northern Mariana Islands . . . : (a) [] the immigration and naturalization laws of the United States."). This changed in 2008 when Congress passed the Consolidated Natural Resources Act ("CNRA"), codified in relevant part at 48 U.S.C. §§ 1806–1808. The

CNRA provided that the "immigration laws"**[3]** of the United States "shall apply" to the CNMI no later than December 1, 2009. *See id.* § 1806(a)(1) (setting June 1, 2009 as the "transition program effective date"—that is, the date that the U.S. immigration laws would take effect in the CNMI); *id.* § 1806(a)(3) (authorizing the Secretary of Homeland Security to "delay[] [the transition program effective date] for a period not to exceed more than [sic] 180 days after such date"). U.S. immigration laws became applicable to the CNMI on November 28, 2009. *See* 8 C.F.R. § 1001.1(bb). Also, the CNRA "made the CNMI part of the United States within the meaning of the Immigration and Nationality Act." *Eche v. Holder*, 694 F.3d 1026, 1027 (9th Cir. 2012) (citing CNRA § 702, Pub. L. No. 110-229, 122 Stat. 754, 866 (2008); 8 U.S.C. § 1101(a)(36), (a)(38)). Therefore, since November 28, 2009, the CNMI has been part of the United States for purposes of the immigration laws.

## B. Minto's History in the CNMI

Minto is a native of Bangladesh. He arrived in the CNMI by plane in 1997 and was admitted with a nonresident worker entry permit. In 2003, he married Maria Aurelio Ray ("Ray"), a citizen of the Federated States of Micronesia**[4]** and a resident of the CNMI. After his marriage, Minto received an entry permit under section 706D of the Northern Mariana Islands Immigration Regulations as an immediate relative of

---

**[3]** The CNRA incorporates by reference 8 U.S.C. § 1101(a)(17), which defines the term "immigration laws" as "all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens." *See* 48 U.S.C. § 1806(a).

**[4]** The Federated States of Micronesia ("FSM") is an independent country, but it has signed a Compact of Free Association with the United States. Citizens of the FSM are not United States citizens.

a resident of the CNMI.  *See* 7 N. Mar. I. Reg. 3786–87 (July 22, 1985).

In 2008, the CNMI Director of Immigration revoked Minto's 706D entry permit because a CNMI court had convicted Ray of two counts of conspiracy to commit marriage fraud.  Minto was also convicted of conspiracy to commit marriage fraud and solicitation a few months after his wife's convictions.  The convictions did not involve Minto's marriage to Ray, the legitimacy of which has not been questioned.  According to the CNMI Director of Immigration, Ray was "deportable" because of this felony offense, and Ray could therefore no longer serve as the sponsoring spouse for Minto's 706D entry permit.  Minto appealed the decision to revoke his entry permit to the CNMI Attorney General on the basis that Ray's conviction was not final because Ray had filed a motion for a new trial, which was awaiting adjudication.

### C.  Procedural History

On May 12, 2010, the Department of Homeland Security ("DHS") served Minto with a Notice to Appear ("NTA"). Allegedly, Minto was "an immigrant not in possession of a valid unexpired immigration visa . . . or other valid entry document."  The NTA charged Minto with being removable from the United States based on §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1182(a)(6)(A)(i), 1182(a)(7)(A)(i)(I).  Section 1182(a)(6) states that an alien is inadmissible if that alien is "present in the United States without being admitted or paroled."  Section 1182(a)(7) states that an immigrant is inadmissible if the immigrant lacks a valid entry document "at the time of application for admission."

The IJ sustained the charge under § 1182(a)(7). The IJ ordered Minto removed.

Minto appealed the removal order to the BIA. Before the BIA, Minto moved for a remand to apply for parole under a new program created by the United States Citizenship and Immigration Services ("USCIS") called Parole for Immediate Relatives of U.S. Citizens and Certain Stateless Individuals ("the USCIS program"). The BIA dismissed the petition for review, thereby affirming the removal order, and denied the motion for remand. The BIA found that Minto was not entitled to parole under the USCIS program because Minto did not provide evidence of lawful presence in the CNMI as of November 27, 2011. Specifically, the BIA found that he had failed to provide documentation that Ray had filed a motion for a new trial, that Ray had appealed the conviction, or that Minto's appeal of the revocation of his entry permit was successful.

Minto then filed a timely petition for review with this Court, arguing that he is not removable under § 1182(a)(7).

## II. JURISDICTION AND STANDARD OF REVIEW

This Court reviews the BIA's legal determinations *de novo*. *De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004). The BIA's factual findings are reviewed for "substantial evidence," and this Court will not reverse the BIA's factual findings "unless the evidence compels a contrary result." *Gallegos-Vasquez v. Holder*, 636 F.3d 1181, 1184 (9th Cir. 2011). Since the BIA decision agreed with the IJ's reasoning in dismissing Minto's petition for review, this Court reviews both decisions. *See Kumar v. Holder*, 728 F.3d 993, 998 (9th Cir. 2013).

## III.    ANALYSIS

### A.  Minto is removable under § 1182(a)(7)

The CNRA made the CNMI subject to the immigration laws of the United States a year before removal proceedings were commenced against Minto.  *See supra* p. 4–5.  The CNRA states that all of the INA's grounds of removability apply to individuals within the CNMI with one exception. *See* 48 U.S.C. § 1806(e)(4) ("Except as specifically provided in paragraph (1)(A) of this subsection, nothing in this subsection shall prohibit or limit the removal of any alien who is removable under the Immigration and Nationality Act.").  The only exception states that "no alien who is lawfully present in the [CNMI]" as of November 28, 2009, "shall be removed . . . on the grounds that such alien's presence in the [CNMI] is a violation of . . . 8 U.S.C. § 1182(a)(6)(A)" until "the completion of the period of the alien's admission under immigration laws of the Commonwealth; or . . . 2 years after the transition program effective date."  *See* 48 U.S.C. § 1806(e)(1)(A).

However, section 212(a)(7) of the INA, codified at 8 U.S.C. § 1182(a)(7), provides a different ground for removability than does § 1182(a)(6)(A): failure to possess a valid entry document at the time of application for admission.  Minto was served with the NTA on May 12, 2010, after the CNMI became subject to United States immigration laws.  Therefore, § 1182(a)(7) is potentially applicable to Minto.

Section 1182(a)(7) states in relevant part:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission . . . who is not in

> possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter . . . is inadmissible.

8 U.S.C. § 1182(a)(7)(A)(i)(I). Section 1182(a)(7) has three elements: the individual in question (1) is an immigrant (2) who "at the time of application for admission" (3) lacks a valid entry document.

The government has established the first element. Minto is an "immigrant" because this term applies to "every alien" except certain aliens, including ambassadors and temporary workers, who are specifically designated "nonimmigrant aliens." *See* 8 U.S.C. § 1101(a)(15). Before this Court, Minto does not challenge that he is an immigrant.[5]

The government has also established the third element. Minto has never had "a visa, reentry permit, border crossing identification card, or other valid entry document" to the United States. Minto agrees.

The parties dispute the second element, whether Minto is an "applicant for admission." We conclude he is because an immigrant in Minto's position is deemed by law to be making a continuing application for admission by his mere presence in the CNMI. 8 U.S.C. § 1225(a)(1) states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." As noted above, the immigration laws of the

---

**[5]** Minto unsuccessfully argued that he was not an immigrant to the IJ and the BIA, but does not repeat that argument before us.

United States were made applicable to the CNMI on November 28, 2009. Therefore, Minto, who was present in the CNMI without admission or parole on November 28, 2009, is "deemed" to be "an applicant for admission."

Nor did Minto's status as an applicant for admission terminate at any point. There is a "well-established immigration practice that treats an application for admission as a continuing one." *Matter of Valenzuela-Felix*, 26 I&N Dec. 53, 59 (BIA 2012). Accordingly, the Second, Fifth and Seventh Circuits have held that the relevant facts and law for determining a petitioner's admissibility are those in existence "at the time the application is finally considered" by the agency. *Ali v. Reno*, 22 F.3d 442, 448 n.3 (2d Cir. 1994) (internal quotation marks and citation omitted); *see also Munoz v. Holder*, 755 F.3d 366, 372 (5th Cir. 2014) (same); *Palmer v. I.N.S.*, 4 F.3d 482, 485 n.11 (7th Cir. 1993) (same). We agree and hold that Minto's application for admission that began on the transition program effective date continued until it was considered by the IJ.

8 U.S.C. § 1229a, which governs removal proceedings, including Minto's, assumes that an alien in removal proceedings will present a continuing application for admission. 8 U.S.C. § 1229a(a)(3) states, "[u]nless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." During a § 1229a removal proceeding, "if the alien is an applicant for admission," the alien has the burden of establishing that he is "clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title[.]" 8 U.S.C. § 1229a(c)(2)(A). Alternatively, the alien must show by "clear and convincing

evidence" that he is "lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2)(B). Therefore, § 1229a(c)(2) contemplates that the alien in a removal proceeding is necessarily either an "applicant for admission" whose continuing application will be considered during that proceeding or an alien who alleges he is already lawfully present in the United States because of a prior admission.

For the foregoing reasons, we hold that an immigrant may be found inadmissible under § 1182(a)(7) when the immigrant is found to lack a valid entry document during a removal proceeding.

### B. Interpreting § 1182(a)(7) to apply to Minto is not contrary to Congress's intent in enacting the CNRA

Minto argues that this interpretation of § 1182(a)(7), as applied to aliens in the CNMI, would undermine Congress's intent in passing the CNRA. It is true that, as noted above, the CNRA did create a transition period in which aliens lawfully present in the CNMI could not be removed on the basis of § 1182(a)(6). 48 U.S.C. § 1806(e)(1)(A).

But holding that Minto is removable under § 1182(a)(7) would not contravene Congress's intent to offer limited protection from removal as expressed in 48 U.S.C. § 1806(e)(1)(A). First, the CNRA expressly states that, except for the temporary exemption from removability under § 1182(a)(6), "nothing in this subsection shall prohibit or limit the removal of any alien who is removable under the Immigration and Nationality Act." 48 U.S.C. § 1806(e)(4). Indeed, this Court has previously recognized that "[t]he CNRA's plain text commands that the exceptions to the principle that the immigration laws of the United States

apply to the CNMI be restricted to those explicitly set forth in the statute[.]" *United States v. Yong Jun Li*, 643 F.3d 1183, 1185 (9th Cir. 2011).

Also, the CNRA itself provided a mechanism for aliens lawfully present in the CNMI to avoid removal under § 1182(a)(7). The CNRA directed the Secretary of Homeland Security to establish a program to provide nonimmigrant worker visas for aliens present in the CNMI. 48 U.S.C. § 1806(d)(2). This program was implemented by regulation. 8 C.F.R. § 214.2(w). Furthermore, as noted above, USCIS implemented a program that allowed certain CNMI aliens to receive parole under 8 U.S.C. § 1182(d)(5)[6] on a case-by-case basis. USCIS determined that Minto himself was ineligible for this program because he could not demonstrate lawful presence and because of his conviction for conspiracy and solicitation to commit marriage fraud.[7]

---

[6] This section allows the Attorney General to temporarily parole into the United States an alien applying for admission "on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A).

[7] The parties dispute whether Minto was lawfully present in the CNMI on November 28, 2009. According to Minto, his administrative appeal from his entry permit revocation made his continuing presence in the CNMI lawful. According to the government, Minto's appeal became moot on November 28, 2009, when CNMI officials lost the authority to enforce their own immigration laws. Also, the government states that Minto did not introduce evidence demonstrating that his appeal was still pending as of November 28, 2009, or was successful. We need not decide this issue since lawful presence in the CNMI under CNMI law would not save Minto from being removable under 8 U.S.C. § 1182(a)(7) because he lacked a valid entry permit. Minto does not argue that his 706D entry permit, the revocation of which he allegedly appealed, was a "valid entry document" for purposes of § 1182(a)(7).

## IV.    CONCLUSION

We deny Minto's petition for review.  Minto is an immigrant who lacked a valid entry document when his continuing application for admission was considered by the IJ during his removal proceeding.  Therefore, the IJ and the BIA correctly concluded that Minto was inadmissible under 8 U.S.C. § 1182(a)(7).

**DENIED.**